IC63MELS                    Sentence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

      v.                                17 CR 647 (NRB)

ALEXANDER MELO,

          Defendant.

------------------------------x

                              New York, N.Y.
                              October 6, 2018
                              4:00 p.m.

Before:

            HON. NAOMI REICE BUCHWALD,

                         District Judge

                APPEARANCES

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
HAGAN C. SCOTTEN
    Assistant United States Attorney

RICHARD H. ROSENBERG
    Attorney for Defendant

1           THE DEPUTY CLERK:  This is 17 CR 647, United States v.
2   Alexander Melo.  Is the government present and ready to
3   proceed?
4           MR. SCOTTEN:  We are.  Good afternoon, your Honor.
5   Hagan Scotten for the government.
6           THE DEPUTY CLERK:  Is the defendant present and ready
7   to proceed?
8           MR. ROSENBERG:  Yes, your Honor.  Richard Rosenberg
9   for Alexander Melo.
10          THE COURT:  This sentencing was originally scheduled
11  for November 20, and we did get together on November 20.  At
12  that time, it became clear to at least the Court for the first
13  time that the defendant's sentencing request was not for a
14  guideline sentence within the range that would be applicable in
15  the absence of career offender status.  But rather, that the
16  defendant was essentially asking for no further jail time, and
17  a sentence of inpatient drug treatment.
18          Is that a fair summary of what happened the last time?
19          MR. ROSENBERG:  Yes, your Honor.
20          THE COURT:  So, I think in light of that, it was my
21  suggestion that we adjourn to give me some chance to think
22  through this case a second time.  And also to give me a chance
23  to speak to the probation officer and see what insight she
24  might have.
25          So, I did both those things.  Let me just, before I go

1   on, let me give both parties a chance to say anything else that
2   they would like to.
3           I will say, in reviewing what happened the last time,
4   I think that the government, defense, and the Court were all on
5   the same page that career offender status was inappropriate as
6   a basis for sentencing in this case.  Even though, as a matter
7   of pure guidelines analysis, it applied.  So, we had put that
8   off to some sort of back burner.
9           Okay, so let me just let counsel speak if there are
10  any thoughts you've had since the last time.
11          MR. ROSENBERG:  Well, your Honor, I did try, I did
12  reach out to a program, I got in touch with Federal Defenders
13  for their recommendations of programs, they gave me two:
14  Educational Alliance and Samaritan.  I contacted the
15  Educational Alliance people, I spoke to a Mr. Ford who is the
16  director of inpatient intake, and yes, they do have programs,
17  they have a contract with Southern District probation.  But
18  they needed to speak to probation because they have to have
19  some kind of assurance that they'll be paid to investigate or
20  to interview and to evaluate.
21          So, I did try to get in touch with the probation
22  officer by phone and by e-mail.  And left the contact --
23          THE COURT:  She was on vacation.
24          MR. ROSENBERG:  I understand.
25          THE COURT:  As it turned out.

          MR. ROSENBERG:  As it turns out, I couldn't go any
further with setting up any fixed proposal or come in and say,
well, here is a program that's willing to take him, because I
didn't have the authority to represent that they would be hired
by probation if in fact Mr. Melo qualified.

          I'm sorry that my memo wasn't more clear.  I guess I
was too subtle, your Honor.  But, yes, it is still our fervent
hope and wish that Mr. Melo receives or an opportunity to
receive the treatment that he desperately wants and he so
desperately needs.

          I know your Honor has given this thought and has heard
the arguments and read the papers, so I don't want to belabor
things, but I just wanted the Court to know that I did try to
come in here today, or whatever day we were going to convene
with some proposal that was at least put on the table anyway.
I'm sorry I don't have that.

          THE COURT:  That's fine.

          Mr. Scotten, I'm not insisting that you say anything.
I just wanted to give everybody a chance.

          MR. SCOTTEN:  Sure.  So I think you have our
submission from last time.  Unless the Court has any questions,
our position is, generally, we agree the guidelines are far too
high.  Not sure that a time served sentence is appropriate
given the defendant has been in jail 17 months and has
previously had sentences around this area, yet recidivated.  On

the other hand, his acceptance of responsibility in this case is as complete as I've ever seen of any defendant, so I'm not here to pound the table and suggest that significantly more incarceration is necessary either.

        MR. ROSENBERG:  And Mrs. Melo is in court again.  I'm sorry for not pointing that out.

        THE COURT:  All right.  I believe everyone hopes that inpatient drug treatment will work.  It remains simply that: It's a hope.  And against that hope, is a history of six prior sentences involving drugs, none of which sufficiently, shall we say, scared the defendant to changing his ways or really trying to get the help that he needs.  So, the Court needs to balance the criminal history and the need for drug treatment in order to arrive at a just sentence which considers all of the 3553(a) factors.

        Having considered the defendant's prior sentences, and his avowed intention to break the cycle, the Court has concluded that a sentence of 24 months is appropriate.  And further, the defendant will be placed on supervised release for three years.  There is a $100 special assessment.

        And I am going to make it a recommendation that he receive inpatient treatment as well as imposing all the mandatory, standard, and other special conditions as set out in the presentence report.

        I just don't recall, as I say, I've been on trial so

1    I've not been focused.  Are there any open counts in this case?
2              MR. SCOTTEN:  From an abundance of caution, I think it
3    is a single-count indictment, but we'll move to dismiss any
4    open counts.
5              THE COURT:  So ordered.  And again, if the plea
6    agreement hasn't waived the right to appeal the sentence,
7    Mr. Melo is advised he has 14 days to do so.
8              Is there anything else at this time?  Mr. Melo.
9              THE DEFENDANT:  Yes, ma'am.  Good evening.  Thank you,
10   ma'am.  At this point in my life --
11             THE COURT:  By the way, just understand something.
12   You've already served 17 months of the 24, and I know you had a
13   incident in prison when you were disciplined, so I'm not
14   100 percent sure whether you'll get all the good time credit.
15   But, essentially going forward it is an additional short period
16   of time.  I just want you to understand that.
17             THE DEFENDANT:  It was, it wasn't no good time tooken,
18   it wasn't serious.  I was placed in SHU for 30 days.  That was
19   the day I got the plea deal, the 151 to 188, so I went through
20   a little rough that day, I didn't know how to cope with that. I
21   didn't know, even though Mr. Rosenberg was telling me they
22   weren't mandatory.  It was just still something I couldn't
23   inhale.  But, your Honor, thank you.
24             THE COURT:  That's an interesting word.
25             THE DEFENDANT:  I think the only time you'll see me

1  back in any courtroom is for me asking for permission to travel
2  or if, God forbid, me and my probation officer come to an
3  disagreement.
4            THE COURT:  Listen.
5            THE DEFENDANT:  To ask for your permission.
6            THE COURT:  Here's the way it goes.  You think of that
7  probation officer as it's me.
8            THE DEFENDANT:  Understood.
9            THE COURT:  You do what they say.
10           THE DEFENDANT:  Understood.
11           THE COURT:  Nothing is the subject of discussion.
12 Mr. Rosenberg has really gone above and beyond --
13           THE DEFENDANT:  Understood, ma'am.
14           THE COURT:  -- arguing for you.  And there comes a
15 point in everyone's life where the chances come to an end.
16 You're at that point.
17           THE DEFENDANT:  Yes, ma'am.
18           THE COURT:  And you need to -- that's an internal
19 commitment.  Your mom can't do it for you, Mr. Rosenberg can't
20 do it for you.  You make a choice now.
21           THE DEFENDANT:  You're absolutely right, your Honor.
22           THE COURT:  For someone who is a little older than
23 you, you have a huge amount of life in front of you, and it's
24 not all over by any stretch of the imagination.  But, you need
25 to say to yourself, I'm done with that life, I'm going on.  No

1    drugs.  I'm going to become addicted to chocolate ice cream or
2    whatever it is that you like.
3            THE DEFENDANT:  Yes, ma'am.
4            THE COURT:  All right?
5            THE DEFENDANT:  Yes, ma'am.
6            THE COURT:  It doesn't matter to me.  Pick any flavor
7    you like.
8            THE DEFENDANT:  Yes, ma'am.
9            THE COURT:  And that's what I'm going to be, you know,
10   when I'm getting upset.  I am going to my favorite candy or my
11   favorite ice cream.  Whatever it is, as long as it's legal.
12           THE DEFENDANT:  Yes, ma'am.
13           THE COURT:  Your choice.
14           One other thing I wanted to say to you.  Don't set
15   your goals for yourself too high.
16           THE DEFENDANT:  Understood, ma'am.
17           THE COURT:  Because if you do, you're going to fail
18   and then you are going to feel crappy.  So, you know that
19   expression about taking it day by day and baby steps?  You
20   know, you can hold down the simplest job.  That's good.  You
21   don't have to create a whole business.  You know, it's okay to
22   shelve groceries in a supermarket.  It's okay to work at
23   McDonald's.  If you start out and you work 30 hours a week,
24   fantastic.  If you can then build up to more hours or you start
25   out at 20 hours, doing all those things, they call them baby

1   steps.

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  Focus on baby steps, not giant steps,
4   because that's not the way things work.  I didn't start out,
5   you know, getting out of law school and say, well, I'm going to
6   become a federal judge.  You know, it's step by step, all
7   right.

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  So you do the same thing.  Okay?  If you
10  do it in little steps every day, you'll feel good about
11  yourself.  Every day you feel good about yourself will make the
12  next day easier.  If you start out with huge goals, you're
13  going to feel crappy, and when you feel crappy, you are
14  inclined to go use an illegal substance.  Okay?

15          THE DEFENDANT:  Yes, ma'am.  Thank you ma'am.

16          MR. SCOTTEN:  Thank you, your Honor.

17          MR. ROSENBERG:  So, your Honor, the recommendation
18  will be part of supervised release for inpatient?

19          THE COURT:  Yes.  Yes.

20          MR. ROSENBERG:  So probation will decide?

21          THE COURT:  And they'll figure it out.

22          MR. ROSENBERG:  They'll figure it out.  That's great.
23  Thank you very, very much, your Honor, for your understanding
24  and your compassion.  Thank you.

25          (Adjourned)